**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| | § | |
| **SHIRLEY ALLYN McPETERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:07-CV-0112-C** |
| | § | **ECF** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed June 4, 2007, for judicial

review of the administrative decision of the Commissioner of Social Security denying Plaintiff's

application for supplemental security income ("SSI") benefits under Title XVI of the Social Security

Act. Plaintiff filed a brief in support of her complaint on October 12, 2007, and Defendant filed a

brief on December 12, 2007. The parties consented to having the United States Magistrate Judge

conduct all further proceedings in this case on June 7, 2007 (Doc. 8), and August 13, 2007 (Doc.

16). This court has considered the pleadings, the briefs, and the administrative record and finds that

the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed

with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff protectively filed an application for supplemental security income benefits on

August 15, 2003, alleging disability beginning June 27, 1997. Tr. 24. Plaintiff's application was

denied initially and upon reconsideration. Tr. 24, 35-40, 42-45. Plaintiff timely filed a Request for

Hearing by Administrative Law Judge, and this case came for hearing before the Administrative Law Judge ("ALJ") on November 30, 2005. Tr. 24, 788-831. Plaintiff, represented by an attorney, testified in her own behalf. Tr. 790-804, 813-19, 827-30. John Simonds, a medical expert ("ME"), and Carol S. Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 24, 804-13, 819-27. The ALJ issued a decision unfavorable to Plaintiff on April 26, 2006. Tr. 21-32.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He noted that he must decide if Plaintiff has been disabled since August 15, 2003, the protective filing date of her application, thereafter referred to as the alleged disability onset date, and whether the asserted impairments meet the applicable duration requirements. He found that: Plaintiff had not engaged in substantial gainful activity at any time since August 15, 2003. Tr. 31. Plaintiff has "severe" impairments, including bipolar disorder, post-traumatic stress disorder and panic disorder, depression, anxiety, migraine headaches, a spastic colon, diabetes mellitus, hypothyroidism, hypertension, arthralgias, and obesity. Tr. 25, 31. He found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 31. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in significant numbers in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 26.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 31.

The ALJ found that Plaintiff could not return to her past relevant work as a waitress or a pharmacy clerk. Tr. 25, 29, 31. He noted that Plaintiff was considered a "younger individual" with a G.E.D. 20 C.F.R. §§ 416.963, 416.964; Tr. 29-31.

The ALJ found that Plaintiff retained the RFC to perform the sustained exertional requirements of a full range of relatively less strenuous light work duties, with the following work-related mental limitations: Plaintiff can understand, remember, and carry out only simple, one- and two-step job instructions and tasks; she cannot have more than incidental contact with the public; and she cannot work in collaboration with co-workers. Tr. 30. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 30, 32. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of hand packer, with 6,600 jobs in Texas and 95,000 jobs nationally; assembler, with 6,500 jobs in Texas and 108,000 jobs nationally; and grader/sorter, with 800 jobs in Texas and 25,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id.*

Plaintiff submitted a Request for Review of Hearing Decision/Order on May 5, 2006. Tr. 18-20. The Appeals Council denied Plaintiff's request and issued its opinion on April 4, 2007, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 5-8. The ALJ's decision, therefore, became the final decision of the Commissioner.

On June 4, 2007, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy. Tr. 18-19.

# III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to apply the "C" criteria of either Sections 12.04 or 12.06 of the Listing of Impairments, failed to properly assess Plaintiff's mental RFC and erred in performing the psychiatric review technique, and failed to make a finding regarding Plaintiff's ability to sustain work on a regular and continuing basis.  The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.   Whether the ALJ's erred by failing to find that Plaintiff's mental impairments meet or equal in severity any section of the Listing of Impairments.**

Plaintiff alleges that the ALJ erred by failing to find that her mental impairments meet or equal in severity Sections 12.04 and 12.06 of the Listing of Impairments.  Plaintiff specifically argues that the ALJ erred in finding that she has not had repeated episodes of decompensation, as described in § 12.04C and 12.06C. She also argues that the ALJ's finding as to the functional limitation imposed by her impairments under the "part B" criteria was not supported by substantial evidence.

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that his impairments meet or equal one of the listings in Appendix 1 of 20 C.F.R. Part 404.  The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings.  At step 3 the burden of proof rests with a claimant.  Ultimately, the claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing.  20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).  That burden is to provide and identify medical signs and laboratory

findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990).

In evaluating mental disorders under the Listing of Impairments, the Commissioner first considers whether the claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00. Upon such a determination, the Commissioner then considers the criteria set forth in paragraphs B and C, which describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. *Id.* The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description that is manifested by the medical findings. *Id.* The Commissioner will first consider the paragraph B criteria before the paragraph C criteria and will assess the paragraph C criteria only if it is found that the paragraph B criteria are not satisfied. *Id.* The claimant will be found to meet a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied, thereby establishing presumptive disability. 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00.

Plaintiff argues that she has met the criteria under paragraph C of § 12.04, Affective Disorders, and has shown presumptive disability by demonstrating a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by

medication or psychosocial support, with repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.04C. In order to meet the criteria of § 12.04 under paragraph C, Plaintiff must show that she has met the durational requirement, as well as one of the other criterion.

Plaintiff first argues that she has met the criteria under paragraph C of § 12.04 with repeated episodes of decompensation of extended duration and a residual disease process that has resulted in marginal adjustment.

Section 12.00 defines episodes of decompensation as:

exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00 C(4). This section also defines repeated episodes of decompensation, each of extended duration, to mean "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id*. More frequent episodes of shorter duration or less frequent episodes of longer duration may be considered to substitute for the listed finding in a determination of equivalence. *Id*.

Plaintiff also argues that she has met the criteria of 12.06, Anxiety Related Disorders, having shown a generalized persistent anxiety, as described in 12.06 A, and a complete inability to function independently outside the arena of one's home. Section 12.00 F explains that highly structured and

supportive settings, such as provided in a hospital or care facility or someone's home may reduce a claimant's symptoms and signs of an underlying mental disorder, and the ability to function outside of such highly structured settings will be considered. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00 F.

Plaintiff claims that she has suffered at least three episodes of decompensation, each of extended length. She also argues that she is so marginally adjusted that even minimal increases in mental demands or environmental changes cause decompensation and that she has been unable to function outside of the highly supportive living arrangement in her home for many years. The ALJ found that Plaintiff has experienced one extended episode of decompensation. Tr. 31. The ALJ also found that Plaintiff's mental disorder has not resulted in such marginal adjustment that even minimal increases in mental demands or environmental changes would cause decompensation, nor has Plaintiff been unable to function outside of a highly supportive living environment.

The record indicates that the protective filing date of Plaintiff's application was August 15, 2003. Tr. 24, 89. The ALJ noted that the relevant question was whether Plaintiff has been under a disability since this date. Tr. 25. The ALJ noted that Plaintiff has a long history of depression and that she was a longtime client of the West Texas Centers for MHMR ("MHMR"). *Id.* The ALJ found that Plaintiff's impairments include bipolar disorder, depression, and anxiety, as well as migraine headaches, a spastic color, diabetes mellitus, hypothyroidism, and hypertension. *Id.* The ALJ noted that Plaintiff was hospitalized from April 5-10, 2004, for anxiety and depression with suicidality, stabilizing and leaving against medical advice. Tr. 27. The ALJ noted that Plaintiff underwent brief in-patient care at the Abilene Psychiatric Center in March and June 2005. Tr. 28. He noted that Plaintiff underwent a psychological consultative examination by R. Scott Brown, PsyD, on July 20, 2004. Tr. 27. He noted that Dr. Simonds, a board certified psychiatrist, testified as an ME at the hearing. The ALJ noted that Dr. Simonds testified that he was aware of Plantiff's

in-patient psychiatric care and he noted Dr. Simonds's opinion that Plaintiff's mental impairments may have limited her to performing simple work duties which require minimal to superficial contact with co-workers and the public. Tr. 28. The ALJ discussed the notations of Plaintiff's treating psychiatrists, including Dr. Arif M. Khan, her MHMR psychiatrist; Drs. Michael D. Murray and Raul Rodriguez, who treated her at Rivercrest Hospital; and Dr. Jessie Singh, who attended Plaintiff at the Abilene Psychiatric Center. Tr. 27-29. The ALJ found that these experts' opinions indicate that Plaintiff's mental impairments have been stable since August 15, 2003. Tr. 29.

The ALJ also noted Plaintiff's testimony that she rarely left home except for medical appointments, that she was nervous around others and crowds, and she rarely ventured out by herself except for occasional trips to the library and to visit her sister. Tr. 25-26.

The record indicates that Dr. Brown, the consultative psychologist, examined Plaintiff on July 20, 2004. Tr. 197-200. He indicated her reports of four previous hospitalizations due to "life being sucky." Tr. 197. Dr. Brown noted Plaintiff's report of significant anxiety and daily panic attacks. Tr. 199. He opined that Plaintiff's prognosis was limited due to her current emotional instability. Tr. 200. The record indicates that Plaintiff was treated as an in-patient at Rivercrest Hospital from April 5-10, 2004. Tr. 181-86. Dr. Rodriguez noted a working diagnosis of bipolar disorder. Tr. 181. He noted that Plaintiff reported a history of four previous hospitalizations. Tr. 183. He noted that Plaintiff reported an exacerbation of symptoms of anxiety and depression with strong suicidality, with no specific precipitating events. *Id*. He noted that Plaintiff reported on April 10, 2004, that she was feeling much better and decided to go home, leaving against medical advice. Tr. 181.

Plaintiff received in-patient psychiatric treatment at the Shannon Medical Center for intense depression after separating from her husband. Tr. 693-700. Plaintiff was admitted for treatment voluntarily on March 4, 1999, and was discharged on March 9, 1999. Tr. 719-730, 746-75. Plaintiff

was admitted to Covenant Health System on July 25, 2000, and was treated there until July 31, 2000. Tr. 776-79. Plaintiff was also admitted for treatment to the Shannon Medical Center on June 9, 2001, and was discharged on June 12, 2001. Tr. 731-44.

Plaintiff's treating psychiatrist, Dr. Khan, indicated in a progress note dated March 7, 2003, that Plaintiff reported feeling "much better," having more energy, and feeling good about herself. Tr. 380. Dr. Khan indicated in his progress note dated May 9, 2003, that Plaintiff reported that she was doing fine, had been stable, denied any problems or side effects from her medications, and was getting along with her husband. Tr. 373. He opined that Plaintiff's major depressive disorder, recurrent, moderate, was in remission. *Id*. Dr. Khan indicated in a note dated August 1, 2003, that Plaintiff reported that she was doing okay, although she had some medical problems. Tr. 360. He noted that Plaintiff thinks that she has bipolar disorder but opined that he had seen no evidence of it. *Id*. Dr. Khan noted that upon examination, Plaintiff was neatly dressed; alert and oriented; polite and cooperative; displayed no motor problems; speech was normal in rate and rhythm; affect was neutral and mood was "okay," with no psychosis, delusional thinking, or homicidal or suicidal ideation. *Id*. He noted that Plaintiff denied any side effects from her psychiatric medications, and he indicated a diagnosis of major depressive disorder, recurrent, moderate, in remission and panic disorder. *Id*.

On October 27, 2003, an MHMR care provider indicated that Plaintiff had increased depression and anxiety with the death of her stepmother in a motor vehicle accident. Tr. 353. The provider indicated on November 24, 2003, that Plaintiff was a little better. Tr. 348.

Dr. Murray noted on January 12, 2004, that Plaintiff reported breakthrough anxiety and poor sleep and adjusted her medications. Tr. 328. Dr. Murray indicated on March 8, 2004, that Plaintiff is doing okay overall, although she does remain anxious, she reported that she is not down as much, and her panic attacks were not as long or severe. Tr. 320. Dr. Murray noted Plaintiff's reports of

obsessions and compulsions and post-traumatic stress disorder with nightmares of past trauma. *Id*. He adjusted her medication for insomnia and added a medication for her compulsions and anxiety. *Id*. On March 29, 2004, Dr. Murray noted Plaintiff's report of sleeping better and being less anxious. Tr. 310. Dr. Murray noted on April 28, 2004, that Plaintiff reported improvement since leaving Rivercrest Hospital, with no suicidal or homicidal ideation. Tr. 301. A progress note dated June 23, 2004, from Dr. Murray indicates that Plaintiff had no specific complaints, had no suicidal or homicidal ideation, and had some crying spells, possibly due to menopausal symptoms. Tr. 287. Dr. Murray completed a mental status examination on December 14, 2004. Tr. 274-75. He noted that Plaintiff was depressed with dysphoric mood and constricted affect. Tr. 274. He indicated that Plaintiff's dianoses included major depressive disorder, recurrent, in partial remission, and a history of panic disorder and agoraphobia, as well as chronic post-traumatic stress disorder. Tr. 275. He opined that because of her history of traumas and depressive symptoms, he suspected that improvements in functioning would be slow at best. *Id*. He opined that Plaintiff has a good potential to relate to others which would improve as her depression improved and that she had "limited to almost nonexistent" ability to deal with change or stress in a work setting. *Id*. He opined that Plaintiff had a "limited ability to sustain work." *Id*. On January 25, 2005, Dr. Murray noted a partial response to medication and Plaintiff's report of feeling depressed and crying. Tr. 561. Records indicate that Plaintiff sought help from MHMR personnel obtaining admission to a hospital for in-patient treatment, and Dr. Murray indicated in a progress note her report of treatment at the Abilene Psychiatric Center in March 2005, for 9 or 10 days. Tr. 528. Dr. Murray noted on May 4, 2005, that Plaintiff reported no complaints and was excited about visiting her son in Tyler. Tr. 516. He noted that Plaintiff had a full response to her medication. *Id*. On June 15, 2005, Dr. Murray noted Plaintiff's report of driving more and experiencing more anxiety, as her father was ill in Loraine. Tr. 501.

Plaintiff again sought treatment at the Abilene Psychiatric Center on June 16, 2005. Tr. 568. Dr. Singh noted Plaintiff's report of doing well but becoming very depressed dealing with the health problems and impending death of her adoptive father and mother-in-law. *Id.* Plaintiff indicated that she wanted to leave and was discharged on June 18, 2005. Tr. 567.

Dr. Murray adjusted Plaintiff's medication on July 19, 2005, because of insurance issues. Tr. 487. On August 30, 2005, he noted a partial response to this medication regimen and Plaintiff's report of sleeping better. Tr. 466. He noted that Plaintiff was jovial on that date. *Id.*

The ALJ discussed these matters in his opinion. While Plaintiff clearly had two and possibly three hospital admissions after the protective filing date and prior to the issuance of the ALJ decision, the three instances of in-patient treatment did not occur within a 12 month period, nor were any of them for two weeks' duration. The medical evidence of record does not show that Plaintiff has met the criterion of "repeated episodes of decompensation, each of extended duration," as defined in the Listings. The evidence of record also does not demonstrate that Plaintiff is so marginally adjusted that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate.

Plaintiff argues that the ALJ failed to consider the longitudinal history of her mental impairment. The ALJ's decision demonstrates that he considered such history. Indeed, he described and discussed Plaintiff's mental impairments including her treatment which pre-dated her protective filing date. The ALJ appropriately considered the variations in the levels of Plaintiff's functioning over time, including the time period before her protective filing date.

Nonetheless, the medical evidence of record does not indicate that Plaintiff's mental impairment met the criteria of either §§ 12.04 or 12.06 of the Listing of Impairments. Plaintiff has failed to meet her burden at step 3 to provide and identify medical signs and laboratory findings that support *all* the criteria of a Listing. *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). Plaintiff

having failed to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. The ALJ also discussed the medical evidence of record and the opinion of Plaintiff's treating and examining physicians, the consultative psychologist, and the ME in making his finding. The ALJ did not err in finding at step 3 that Plaintiff's mental impairments did not meet or equal in severity any section of the Listing of Impairments.

As described in Social Security Ruling 96-6p (effective July 2, 1996) ("SSR 96-6p"), the ALJ or the Appeals Council is responsible for deciding the ultimate legal question of whether a listing is met or equaled. While the ALJ or Appeals Council is not bound by a finding of a program physician or psychiatrist as to whether an impairment is equivalent in severity to a Listing, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Id*. In this case Dr. Simonds, the ME, testified that Plaintiff did not meet the criteria of any Listing. Tr. 807. As the ALJ noted, this is also consistent with the opinions of the state agency psychological consultants ("SAMCs"). Tr. 202-38. The ALJ did not err in finding that Plaintiff's impairments were not equal in severity to any section of the Listing of Impairments, and his finding is supported by substantial evidence in the record.

**B.      Whether the ALJ erred in making his mental RFC analysis and in performing the psychiatric review technique.**

Plaintiff argues that the ALJ erred in assessing her mental RFC and in performing the psychiatric review technique by failing to comply with the requirements of 20 C.F.R.

416.920(a)(b)(2) and (e)(2). She also alleges that the ALJ's finding is not supported by substantial evidence.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a; 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "B" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 416.920a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 416.920a(e)(2). The PRTF represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, app. 1, 12.00-12.09 and 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

Plaintiff argues that the ALJ erred by using the term "slight." 20 C.F.R. § 416.920a(c)(4) describes four different levels of limitation as to the functional areas identified, which does not include the term "slight"; rather, the levels described are: none, mild, moderate, and severe, and with regard to episodes of decompensation: none; one or two; three, four or more. The ALJ did indeed use the term "slight" rather than mild.

An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Newton*, 209 F.3d at 459. Should the agency violate its internal rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. [Unit A] 1981) (*per curiam*). A harmless error analysis applies to administrative failure to comply with a regulation. *See Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003). Violation of a social security ruling or regulation merits remand only when a claimant affirmatively demonstrates prejudice. *Hall*, 660 F.2d at 119 n.4. The two concepts are closely related. Prejudice is established by showing that additional evidence could have been produced and "that the additional evidence might have led to a different decision." *Newton,* 209 F.3d at 458. An error is harmless unless there is reason to think that a remand might lead to a different result. *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989). Thus, improprieties noted by Plaintiff will constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Plaintiff argues that the Fifth Circuit in *Loza v. Apfel* indicated that the use of the term "slight" restriction in the activities of daily living instead of the proper standard was rejected as an example of the ALJ applying his own standard. Plaintiff misreads *Loza*, which deals with the severity finding at step 2 and application of an incorrect legal standard, rather than the standard set forth in *Stone v. Heckler* and its progeny. *Loza,* 219 F.3d at 393.

While it is clear that the ALJ used the term "slight" rather than mild or one of the other terms described in 20 C.F.R. § 416.920a, it is also clear that Plaintiff has not demonstrated any prejudice from this alleged error. The evaluation of functional loss described in 20 C.F.R. § 416.920a is used in determining whether a mental impairment is severe. If the ALJ had found that Plaintiff's impairments were not severe, this would have terminated the sequential analysis. However, the ALJ found that Plaintiff's mental impairments were not severe and proceeded to a determination of Plaintiff's RFC. Therefore, even if the ALJ erred by using the term "slight," such error is harmless and does not require remand.

Plaintiff also argues that the ALJ erred in making his mental RFC assessment and erred in failing to ascribe additional limitations imposed by her mental impairments. The record demonstrates that the ALJ included several limitations in his RFC assessment reflecting Plaintiff's mental impairments. Plaintiff alleges that she is more limited and is unable to perform the basic mental demands of unskilled work.

There must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

Plaintiff disagrees with the substance of the RFC finding regarding the limitations imposed by her mental impairments. She argues that she is isolated and that the ALJ engaged in picking and choosing only the evidence which supported his decision. She also argues that she does not retain the capacity to perform the basic mental demands of unskilled work.

The ALJ noted that Planitff was not isolated, as indicated by her relationships with her family. Tr. 29. Plaintiff testified that she cannot leave her home alone or get to a job because she cannot drive. Tr. 792. She testified that she is scared to be around lots of people or be in a room with more than a few people. *Id*. Plaintiff testified that she cannot remember things, cannot concentrate, and gets really disoriented. Tr. 793. She testified that once a week she travels to see her husband's family. Tr. 803.

Dr. Simonds testified that it did not appear that Plaintiff had met a Listing for a year's duration of severity since her mental status exams scores were below the moderate range. Tr. 807. He opined that Plaintiff's severe mental impairments limited her to performing simple work duties that require minimal to superficial contact with co-workers and the public. Tr. 28, 807.

The ALJ indicated that he generally accepted the limitations indicated in Dr. Simonds's opinion. Tr. 29. He specifically found that Plaintiff's work-related mental limitations included being able to understand, remember, and carry out only simple one- and two-step job instructions and tasks; she cannot have more than incidental contact with the public; and she cannot work in collaboration with her co-workers. These limitations are consistent with the medical evidence of record and are supported by substantial evidence.

The Commissioner's *Programs Operations Manual System ("POMS")*,[1] describes the basic mental demands of competitive, remunerative work, including the ability to understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled work (i.e., simple work-related decision); respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting. *See POMS* § DI 25020.010(A)(3)(a). A substantial loss in the ability to meet any of these basic job demands severely limits the potential occupational base and can justify a finding of inability to perform other work. *POMS* § DI 25020.010(A)(3)(b). "Substantial loss" is defined as an inability to perform the particular activity in regular, competitive employment. *Id*.

The ALJ specifically found that Plaintiff could understand and carry out simple one- and two-step instructions and tasks. Tr. 31. He found that she cannot have more than incidental contact with the public and cannot work in collaboration with co-workers. *Id*. The ME testified that although Plaintiff had problems relating to large groups of people, he took that into consideration in opining that Plaintiff could perform simple work with minimal contact with the public and co-workers. Tr. 807, 812. The ALJ relied in part on the testimony of the ME and cited to other evidence in the record to support his RFC finding. The VE testified that a person with Plaintiff's vocational profile, limited to work at the light exertional level, limited to work which required only one- and two-step work instructions and which involve only incidental contact with the public and no collaboration with co-workers, could perform the jobs identified, including the jobs of hand-packers, assemblers, laundry folder, and grader/sorter. Tr. 821-22. The RFC determination does not encompass findings indicating that Plaintiff has experienced a substantial loss in the ability to perform the basic mental demands of unskilled work in regular competitive employment. Moreover,

---

[1]     The POMS may be found at the Social Security Administration Policy Information Site, located at : http://policy.ssa.gov/poms.nsf/partlist!OpenView.

the RFC finding is supported by substantial evidence in the record, including the testimony of the ME, the evidence provided by Plaintiff's treating and examining physicians, psychologists, and mental health providers, Plaintiff's reports of her own activities, and the opinions of the non-examining SAMCs. The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

The court finds that the ALJ did not commit reversible or prejudicial error in performing the psychiatric review technique, that he did not err in evaluating Plaintiff's mental RFC, and that his RFC determination is supported by substantial evidence in the record.

**C.** **Whether the ALJ erred by failing to consider whether Plaintiff can maintain work on a regular and continuing basis.**

Plaintiff alleges that the ALJ erred by failing to consider whether she was capable of working on a regular and continuing basis. She alleges that her mental impairments and episodic symptoms "wax and wane." She claims that her mental impairments are subject to temporary remissions, but because of the episodic nature of her symptoms, which worsen, she is unable to maintain employment.

Plaintiff further argues that the ALJ erred by failing to determine whether she could maintain or sustain work pursuant to *Watson*, 288 F.3d at 218, and *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). In *Singletary* the Fifth Circuit noted that "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination

that the claimant can *hold* whatever job he finds for a significant period of time." 798 F.2d at 822. The requirement for a finding of the ability to maintain employment is not restricted to instances where non-exertional impairments are present. *See Watson*, 288 F.3d at 217-18.

In *Watson* the claimant had degenerative disk disease, which caused the loss of movement in his legs every few weeks and too much pain to work every few weeks. 288 F.3d. at 218. In *Wingo v. Bowen* the ALJ found that the claimant retained the RFC to perform the full range of work at the sedentary level and applied the Medical-Vocational Guidelines to direct a finding of "not disabled." 852 F.2d 827, 829 (5th Cir. 1998). The ALJ in *Wingo* did not consider medical evidence about several of the claimant's impairments, as well as evidence that she was often unable to leave her bed for days at a time. *Id*. Plaintiff argues that because of her severe mental problems, like the claimant in *Singletary*, she is unable to maintain employment.

In the recent case of *Perez v. Barnhart*, the Fifth Circuit clarified that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." 415 F.3d. 457, 465 (5th Cir. 2005) (comparing *Frank* with *Watson*). Rather, a finding of ability to maintain employment is only required in a "situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id*. The Court noted that "[w]ithout such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination." *Id*.

In this case the ALJ specifically found that Plaintiff had the sustained ability to perform employment subject to the noted limitations. Tr. 29. Plaintiff, like the claimant in *Singletary*, alleges that she is unable to maintain employment because of the waxing, waning, and episodic symptoms of her mental impairments. Plaintiff noted that in December 2004, Dr. Murray indicated that at that time Plaintiff had a "limited ability to sustain work," which may persist six months or longer. Pl. Brief at 12, Tr. 275. In *Singletary* the Fifth Circuit explained that "[a] determination that

-20-

a claimant is unable to continue working for significant periods of time must, however, be supported by more than a claimant's personal history; it must also be supported by medical evidence. 798 F.2d at 822 (citing 20 C.F.R. §§ 404.1546; 404.1560). The claimant in *Singletary* was found to be more limited than Plaintiff and was characterized by one physician as "an inadequate personality with periodic alcohol and drug abuse that leads to transient psychotic episodes in a person with low average intelligence, who has had some diffuse brain damage, has had a nomadic life and who had a chaotic rearing," who engaged in inappropriate behavior and poor social adjustment. 798 F.2d at 823. In *Frank* the Fifth Circuit explained that *Watson* requires a situation in which, "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms," and explained that evidence indicating the claimant's degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs would be relevant to a determination of ability to maintain employment. 326 F.3d at 619. The record in this case does not contain the sort of medical evidence described in either *Singletary* or *Frank* indicating that Plaintiff's mental impairments wax and wane in the manifestation of disabling symptoms. In any case, the ALJ found that Plaintiff could sustain the noted RFC.

The record indicates that Plaintiff's mental impairments and symptoms imposed by such impairments have varied over the relevant time period. The record also indicates that Plaintiff's providers have indicated Plaintiff's response to medications, that her depression has been in partial remission, that she had experienced these mental impairments for many years, and that these mental impairments imposed limitations on her ability to perform work-related activities. However, there is substantial evidence in the record to support the ALJ's finding that Plaintiff retains the RFC to perform work activity subject to certain limitations on a sustained basis. The court finds that the ALJ did not err by failing to address whether Plaintiff could maintain employment and that his

determination that Plaintiff retains the RFC to perform a range of work on a sustained basis is supported by substantial evidence in the record.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the ALJ did not err, that the ALJ's opinion and the RFC determination are supported by substantial evidence in the record, that the Commissioners's decision should be affirmed, and that Plaintiff's complaint should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner denying Plaintiff's applications for supplemental security benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed June 4, 2007, is **DISMISSED WITH PREJUDICE.**

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 30th day of September, 2008.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**